Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1136 Union Mall, Suite 808
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PETER ROA and RANDALL FRANKLIN ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. _____ |
| v. ) | |
| ) | |
| CITY AND COUNTY OF HONOLULU ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## <u>VERIFIED COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF</u>

COME NOW the Plaintiffs, Peter Roa and Randall Chatman Franklin, ("Plaintiffs"), by and through their undersigned counsel, and complain of the Defendants as follows:

## I.   <u>PARTIES</u>

**Plaintiffs**

1.     Plaintiff Peter Roa ("Roa") is an adult male resident of the State of Hawaii and resides in Honolulu County and is a citizen of the United States.

2.     Plaintiff Randall Chatman Franklin ("Franklin") is an adult male resident of the State of Hawaii and resides in Honolulu County and is a citizen of the United States.

**Defendant**

3.     Defendant City and County of Honolulu ("City") is a municipal corporation incorporated under the laws of the State of Hawaii. The City is authorized by law to control and maintain the Honolulu Police Department, an agency of the city, who acts on the City's behalf in the area of law enforcement. The City is therefore ultimately responsible for Honolulu Police Department ("HPD") and its actions, and therefore, must assume the risks incidental to the maintenance of HPD, its employees, laws, customs and policies. The City can be

2

served by serving the Department of the Corporation Counsel, City and County of

Honolulu, 530 S. King Street, Room 110, Honolulu, HI 96813.

## II.     JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to

28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988.

2.      Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## III.     STATEMENT OF LAW

**2ND Amendment**

3.      The Second Amendment to the United States Constitution provides: "A

well regulated Militia, being necessary to the security of a free State, the right of the

people to keep and bear Arms shall not be infringed."

4.      The Second Amendment guarantees individuals a fundamental right to

keep and carry arms for self-defense and defense of others in the event of a violent

confrontation. *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v.

Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts,* 577 U.S. 1027 (2016).

5.      Firearms are protected by the Second Amendment. *District of

Columbia v. Heller*, 554 U.S. 570 (2008).

6.      Given the decision in *Heller*, Defendants may not impose regulations

on the right to keep and carry arms that are inconsistent with the Second

Amendment.  *Heller v. District of Columbia,* 801 F.3d 264 (D.C. Cir. 2015).

**HRS §134, Firearms**

7.     Hawaii law requires the registration of all firearms.  *See* H.R.S. §134-3.

8.     Hawaii law requires that "[e]very person who acquires a firearm pursuant to section §134-2 shall register the firearm in the manner prescribed by this section within five days of acquisition." *See* HRS §134-3.

9.     Prior to purchasing a handgun, all persons must apply for a permit to acquire. *See* H.R.S. §134-2.

10.     Pursuant to Hawaii law, after applying, an applicant must wait 14 days before returning to retrieve his permit to acquire.  *See* H.R.S. §134-2

11.     Pursuant to H.R.S. §134-7, no one in the State of Hawaii who has been **convicted of a crime of violence** may own, acquire, or possess a firearm.

§134-7  Ownership or possession prohibited, when; penalty.
(a)   No person who is a fugitive from justice or is a person prohibited from possessing firearms or ammunition under federal law shall own, possess, or control any firearm or ammunition therefor.
(b)   No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been **convicted in this State or elsewhere of having committed a felony, or any crime of violence**, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.
(c)   No person who:
(1)   Is or has been under treatment or counseling for addiction to, abuse of, or dependence upon any dangerous, harmful, or detrimental drug, intoxicating compound as defined in section 712-1240, or intoxicating liquor;
(2)  Has been acquitted of a crime on the grounds of mental disease, disorder, or defect pursuant to section 704-411; or

(3)   Is or has been diagnosed as having a significant behavioral, emotional, or mental disorders as defined by the most current diagnostic manual of the American Psychiatric Association or for treatment for organic brain syndromes;

shall own, possess, or control any firearm or ammunition therefor, unless the person has been medically documented to be no longer adversely affected by the addiction, abuse, dependence, mental disease, disorder, or defect.

(d)  No person who is less than twenty-five years old and has been adjudicated by the Family Court to have committed a felony, two or more crimes of violence, or an illegal sale of any drug shall own, possess or control any firearm or ammunition therefor.

(e)  No minor who:

(1)  Is or has been under treatment for addiction to any dangerous, harmful, or detrimental drug, intoxicating compound as defined in section 712-1240, or intoxicating liquor;

(2)  Is a fugitive from justice; or

(3)  Has been determined not to have been responsible for a criminal act or has been committed to any institution on account of a mental disease, disorder, or defect; shall own, possess, or control any firearm or ammunition therefor, unless the minor has been medically documented to be no longer adversely affected by the addiction, mental disease, disorder, or defect.

For the purposes of enforcing this section, and notwithstanding section 571-84 or any other law to the contrary, any agency within the State shall make its records relating to Family Court adjudications available to law enforcement officials.

(f)  No person who has been restrained pursuant to an order of any court, including a gun violence protective order issued pursuant to part IV, from contacting, threatening, or physically abusing any person, shall possess, control, or transfer ownership of any firearm or ammunition therefor, so long as the protective order, restraining order, or any extension is in effect, unless the order, for good cause shown, specifically permits the possession of a firearm and ammunition.  The protective order or restraining order shall specifically include a statement that possession, control, or transfer of ownership of a firearm or ammunition by the person named in the order is prohibited.  The person shall relinquish possession and control of any firearm and ammunition owned by that person to the police department of the

appropriate county for safekeeping for the duration of the order or extension thereof.  At the time of service of a protective order or restraining order involving firearms and ammunition issued by any court, a police officer may take custody of any and all firearms and ammunition in plain sight, those discovered pursuant to a consensual search, and those firearms surrendered by the person restrained.  If the person restrained is the registered owner of a firearm and knows the location of the firearm, but refuses to surrender the firearm or refuses to disclose the location of the firearm, the person restrained shall be guilty of a misdemeanor.  In any case, when a police officer is unable to locate the firearms and ammunition either registered under this chapter or known to the person granted protection by the court, the police officer shall apply to the court for a search warrant pursuant to chapter 803 for the limited purpose of seizing the firearm and ammunition.

For the purposes of this subsection, good cause shall not be based solely upon the consideration that the person subject to restraint pursuant to an order of any court is required to possess or carry firearms or ammunition during the course of the person's employment.  Good cause consideration may include but not be limited to the protection and safety of the person to whom a restraining order is granted.

(g)  Any person disqualified from ownership, possession, control, or the right to transfer ownership of firearms and ammunition under this section shall surrender or dispose of all firearms and ammunition in compliance with section §134-7.3.

(h)  Any person violating subsection (a) or (b) shall be guilty of a class C felony; provided that any felon violating subsection (b) shall be guilty of a class B felony.  Any person violating subsection (c), (d), (e), (f), or (g) shall be guilty of a misdemeanor.

H.R.S. §134-7, emphasis added.


## HRS §711-1101, Disorderly Conduct

12.  Pursuant to HRS §711-1101, Disorderly Conduct is either a petty misdemeanor or a violation,

§711-1101  Disorderly conduct.

6

(1)  A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, the person:

(a)  Engages in fighting or threatening, or in violent or tumultuous behavior;

(b)  Makes unreasonable noise;

(c)  Subjects another person to offensively coarse behavior or abusive language which is likely to provoke a violent response;

(d)  Creates a hazardous or physically offensive condition by any act which is not performed under any authorized license or permit; or

(e)  Impedes or obstructs, for the purpose of begging or soliciting alms, any person in any public place or in any place open to the public.

(2)  Noise is unreasonable, within the meaning of subsection (1)(b), if considering the nature and purpose of the person's conduct and the circumstances known to the person, including the nature of the location and the time of the day or night, the person's conduct involves a gross deviation from the standard of conduct that a law-abiding citizen would follow in the same situation; or the failure to heed the admonition of a police officer that the noise is unreasonable and should be stopped or reduced.

The renter, resident, or owner-occupant of the premises who knowingly or negligently consents to unreasonable noise on the premises shall be guilty of a noise violation.

(3)  Disorderly conduct is a petty misdemeanor if it is the defendant's intention to cause substantial harm or serious inconvenience, or if the defendant persists in disorderly conduct after reasonable warning or request to desist.  **Otherwise disorderly conduct is a violation.**

HRS § 711-1101, emphasis added.

## HRS §701-107, Grades and Classes of Offenses

And, HRS §701-107 sets forth the grades and classes of offenses and §701-107(5) specifically states that **a violation is not a crime**,

§701-107  Grades and classes of offenses.

(1)  An offense defined by this Code or by any other statute of this State for which a sentence of imprisonment is authorized constitutes a crime.   **Crimes are of three grades:   felonies, misdemeanors, and petty misdemeanors.**  Felonies include murder in the first and second degrees, attempted murder in the first and second degrees, and the following three classes:  class A, class B, and class C.

(2)  A crime is a felony if it is so designated in this Code or if persons convicted thereof may be sentenced to imprisonment for a term which is in excess of one year.

(3)  A crime is a misdemeanor if it is so designated in this Code or in a statute other than this Code enacted subsequent thereto, or if it is defined in a statute other than this Code which provides for a term of imprisonment the maximum of which is one year.

(4)  A crime is a petty misdemeanor if it is so designated in this Code or in a statute other than this Code enacted subsequent thereto, or if it is defined by a statute other than this Code that provides that persons convicted thereof may be sentenced to imprisonment for a term not to exceed thirty days.

(5)  An offense defined by this Code or by any other statute of this State constitutes a violation if it is so designated in this Code or in the law defining the offense or if no other sentence than a fine, or fine and forfeiture or other civil penalty, is authorized upon conviction or if it is defined by a statute other than this Code which provides that the offense shall not constitute a crime.  **A violation does not constitute a crime, and conviction of a violation shall not give rise to any civil disability based on conviction of a criminal offense.**

(6)  Any offense declared by law to constitute a crime, without specification of the grade thereof or of the sentence authorized upon conviction, is a misdemeanor.

(7)  An offense defined by any statute of this State other than this Code shall be classified as provided in this section and the sentence that may be imposed upon conviction thereof shall hereafter be governed by this Code.

HRS §701-107, emphasis added.

13. H.R.S. §134-7 can only apply to felonies, misdemeanors and petty misdemeanors and not all "offenses", which would be classified as

"violations", specifically because H.R.S. § 701-107 states that any criminal disability, such as a prohibition against possessing arms (firearms), does not apply to violations.

## IV.    STATEMENT OF FACTS

### A. PLAINTIFF ROA

14.    Sometime immediately before September 13, 2013, Plaintiff Roa argued with his ex-wife, Sara Roa, in their home in Honolulu.   Sara Roa accused Plaintiff Roa of punching the wall and breaking a dresser during an argument.

15.    On September 17, 2013, the Family Court of the First Circuit issued a Temporary Restraining Order against Plaintiff Roa in Family Court case number 1DA131007466.

16.    On November 5, 2013, the Family Court of the First Circuit issued a five year Order for Protection against Plaintiff Roa in Family Court case number in FCDA-13-1-7446.   The Court Ordered Plaintiff Roa to, inter alia, relinquish all firearms to the Honolulu Police Department for the duration of the Order for Protection.

17.    Approximately 16 months later, on March 17, 2015, Sara Roa moved the Family Court to Dissolve the Order for Protection issued on November 5, 2013, in FCDA-13-1-7446.

18.    The court granted Sara Roa's Motion to Dissolve the Order for Protection in FCDA-13-1-7446 on April 15, 2015. *See* Exhibit 1 2015 Order Dissolving First TRO.

19.    On June 1, 2015 the Family Court of the First Circuit granted Plaintiff Roa's Motion for Return of Firearms, Ammunition, Permits and Licenses.

20.    Immediately after the incident that gave rise to the Order for Protection in FCDA-13-1-7466, that is, on or about September 13, 2013, Plaintiff Roa was arrested in Honolulu for Disorderly Conduct, HRS §711-1101 after a verbal, non-physical argument with another patron in a bar.    Unable to post bail, Plaintiff Roa spent the weekend incarcerated.

21.    On September 16, 2013 Plaintiff Roa appeared in Honolulu District Court and pled no contest to one count of non-criminal Disorderly Conduct, a mere non-criminal violation, pursuant to H.R.S § 711-1101(1)(a)(3), and was sentenced to credit for time served (two days)[1] in lieu of a statutorily authorized fine.    The

---

[1] Plaintiff Roa was not found guilty of a crime; and, two days incarceration (credit for time served) for a mere violation is an illegal sentence.   This illegal sentence is reversible via Hawaii Rules of Penal Procedure, Rule 35.   However, a quick review of the facts shows that Plaintiff Roa spent two days incarcerated over the weekend after his arrest awaiting his court hearing.   By sentencing Plaintiff Roa to 2 days incarceration, credit for time served, the District Court generously avoided imposing a fine on a defendant who was unable to post bail for conduct that was ultimately deemed non-criminal.

Court did not place restrictions on Plaintiff's ownership or possession of firearms. See Notice of Entry of Judgment and/or Order, attached hereto as Exhibit 2.

22.   On November 10, 2020, in case number FCDA-20-1-2381, the Family Court of the First Circuit issued a Temporary Restraining Order against Plaintiff Roa and ordered Plaintiff Roa to relinquish possession of all firearms to Honolulu Police Department.

23.   On November 12, 2020, Mr. Roa temporarily relinquished his firearms to HPD pursuant to the Temporary Restraining Order filed on November 10, 2020 in case number FCDA 20-1-2381.   *See* HPD Property Receipt, attached hereto as Exhibit 3.

24.   On January 8, 2021, after considering sworn testimony and reports generated by the Department of Human Services, the court found insufficient evidence to support the claims in the Temporary Restraining Order (FCDA-20-1-2381) and dissolved the Temporary Restraining Order with prejudice.   *See* Order Dissolving 2020 Temporary Restraining Order, attached hereto as Exhibit 4.

25.   On January 28, 2021, Mr. Roa moved the court for an order to return Mr. Roa's firearms.

26.   Mr. Roa's Motion to Family Court for Return of Firearms, Ammunition, Permits and Licenses was granted on February 22, 2021.   *See* Order

Return of Firearms, Ammunition, Permits and Licenses, attached hereto as Exhibit 5.

27.    Sometime after February 22, 2021, Plaintiff Roa presented the Family Court's Order Granting Motion to Family Court for Return of Firearms, Ammunition, Permits and Licenses to Honolulu Police Department and submitted a written request for a firearm permit and return of his firearms.

28.    On or about March 17th, Plaintiff Roa returned to HPD,

29.    He was verbally denied the return of his firearms and permit by a HPD officer.

30.    He was told he was precluded from possession of firearms because he was convicted of Disorderly Conduct under H.R.S § 711-1101(1)(a).

31.    He was told that he would receive an official denial in writing in the mail.

32.    Weeks passed and Plaintiff Roa didn't receive a written denial letter.

33.    On May 18th, Plaintiff Roa receive a letter dated April 20, 2021, Plaintiff Roa received a letter from Honolulu Police Department informing him that "… under the provisions of the Hawaii Revised Statues (HRS), 134-7(b), you are disqualified from owning, possessing, or controlling any firearms in the State of Hawaii.  Our background investigation revealed that in 2013, you were convicted of Disorderly Conduct under section 711-1101(1)(a) of the HRS, which disqualifies

you from ownership of firearms and ammunition. … If you own of have any firearms, you have 30 days upon receipt of this letter to surrender your firearms, permit, and ammunition to the Honolulu Police Department (HPD) or otherwise transfer ownership.  For consideration of any future firearms applications or return of firearms from HPD evidence, please provide documentation indicating that your conviction was expunged or pardoned. Personnel from our Firearms Unit are available to assist you.  Please contact our office at 723-3190 if you have any questions about your disqualification." *See* Exhibit 6 Roa Letter from HPD.

### B. Plaintiff Randall Chatman Franklin

34.     On March 6, 2011, Plaintiff Franklin was at his mother's house when he got into an argument with his brother.

35.     The police came and detained him.

36.      Plaintiff Franklin was convicted of Disorderly Conduct – Violation on May 11, 2012 in Honolulu District Court in case number 1P11-11933, arrest report number 11-083767, which is not a crime. *See* Exhibit 7 Chatman Ecrim Record.

37.     Under Hawaii law [a] violation does not constitute a crime, and conviction of a violation shall not give rise to any civil disability based on conviction of a criminal offense. *See* H.R.S. §701-107.

38.     Thus, Plaintiff Franklin is not prohibited under Hawaii law from owning a firearm.

39.     On February 28, 2021, Plaintiff Randall Chatman Franklin went to HPD and applied for a permit to acquire.

40.     Some days later, Plaintiff Franklin was called by a member of HPD and was told his application had been denied due to his violation for disorderly conduct.

41.     This was later confirmed by letter. See Exhibit 8 Randall Chatman Franklin Letter from HPD.

42.     HPD will not issue him a firearms permit.

## B. Plaintiff Peter Roa Biographical Facts

43.     Plaintiff Roa was born in Riverside, California.

44.     He was raised on the island of Oahu.

45.     Plaintiff Roa currently resides on Oahu.

46.     Plaintiff Roa is currently employed as an electrician.

47.     Plaintiff Peter Roa has never been convicted of a crime that would disqualify him from firearms ownership under federal law.

48.     Outside of the law that could potentially be at issue in this litigation, Plaintiff Roa has never been convicted of a crime that would disqualify him under state law.

49.     Plaintiff Roa has never been diagnosed with a mental disorder that would disqualify him from firearms ownership under Hawaii or federal law.

50.     Plaintiff Roa does not take illegal drugs or abuse alcohol.

**C. Plaintiff Randall Franklin (Biographical Facts)**

51.     Plaintiff Franklin was born and raised on Oahu.

52.     Plaintiff Franklin is employed at a middle school as a security guard and a mentor to middle school students.

53.     Plaintiff Franklin has never been convicted of a crime that would disqualify him from firearms ownership under federal law.

54.     Outside of the law that potentially could be at issue in this complaint, Plaintiff Franklin has never been convicted of a crime that would disqualify him from firearms ownership under state law.

55.     Plaintiff Franklin has never been diagnosed with a mental disorder that would disqualify him from firearms ownership under Hawaii or federal law.

56.     Plaintiff Franklin does not abuse alcohol or use illegal drugs.

## COUNT I

## U.S. CONST., AMEND. II

57.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth herein.

58.     Hawaii state law does not support criminalizing the possession of firearms by Plaintiffs because neither of their disorderly conduct convictions are for crimes of violence.

59.     Thus, categorically criminalizing the possession of firearms by those convicted of H.R.S. § 711-1101(1)(a) is an independent City policy.

60.     Defendants' policy of criminalizing the possession of firearms by Plaintiffs violates their Second Amendment rights.

61.     Alternatively, if the City may properly criminalize the ownership, possession and acquisition of firearms based on a conviction for a violation of HRS § 711-1101(1)(a) pursuant to H.R.S. §134-7, then H.R.S. §134-7 is unconstitutional as applied to Plaintiffs.

## COUNT II

## Due Process

62.     The Due Process states that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law". *See* U.S. Const. amend. XIV, § 2.

63.     Under the law governing substantive due process, Plaintiffs must prove that: (1) he had a valid interest at stake; and (2) defendants infringed on that interest in an arbitrary or irrational manner. *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 545 (2d Cir. 2014).

64.     Plaintiffs have a valid liberty interest in their constitutional right to own a firearm.

65.     The City infringes on that right by acting in an ultra vires manner which is inherently arbitrary.

66.     The City is acting in a ultra vires manner because it purports to apply Hawaii's prohibition on firearm ownership for persons convicted of crimes of violence onto persons such as Plaintiffs who have never been convicted of a disqualifying crime.

67.     Because the City "did not have authority for the actions it took regarding" Plaintiffs firearm rights the City's action was "ultra vires and, as a result, sufficiently arbitrary to amount to a substantive due process violation." *Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778, 790 (2d Cir. 2007).

68.     Thus, the City has violated Plaintiffs Due Process rights.

## COUNT III

### Equal Protection

69.     The Equal Protection Clause of the 14th Amendment provides "nor shall any State ... deny to any person within its jurisdiction the equal protection of the laws". *See* U.S. Const. amend. XIV, § 2.

70.     The City's policy is a violation of Equal Protection because Plaintiffs have never been convicted of a prohibiting offense, yet they are being treated differently than other law-abiding citizens.

**Vagueness**

71.     Alternatively, if this Court finds that a conviction for a violation can be grounds to disqualify a person under H.R.S. § 134-7, then the statutory scheme is void for vagueness.

72.     It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 2298 (1972)

73.     Here, the H.R.S. states that a violation is not a crime and does not subject you to penalties associated with crimes.

74.     H.R.S § 134-7 only applies to crimes of violence.

75.     Therefore, assuming a violation can disqualify you under H.R.S. §134-7, the H.R.S. fails to provide fair warning of what is a prohibiting crime and the H.R.S. is unconstitutionally vague both facially and as applied to the Plaintiffs.

**COUNT IV**

**(DECLARATORY JUDGMENT)**

76.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth herein.

77.     The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a).

78.     Absent a declaratory judgment, there is a substantial likelihood that Plaintiffs will suffer irreparable injury in the future.

79.     There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

80.     This Court possesses an independent basis for jurisdiction over the parties.

81.     A judgment declaring that Defendants' policy which denies Plaintiffs the right to own, possess and acquire firearms is unconstitutional as applied to them.

82.     Alternatively, a declaration that H.R.S. §134-7 is unconstitutional as applied to Plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1.     An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing

Defendants' policy of prohibiting people who have been convicted of disorderly conduct as a violation;

2.      Alternatively, if this Court finds a conviction for H.R.S. § 711-1101 (1)(a) constitutes a crime of violence as contemplated by H.R.S. §134-7, Plaintiffs request this Court, enjoin H.R.S. §134-7 and any other relevant provision of the H.R.S. both facially and as applied to them.

3.      Declaratory relief that the complained of City policy is unconstitutional both facially and as applied to Plaintiffs.

4.      Declaratory relief that if this Court finds a conviction for a violation of H.R.S. § 711-1101(1)(a) constitutes a crime of violence as contemplated by H.R.S. §134-7, then H.R.S. §134-7 and any other relevant provision of the H.R.S. is unconstitutional facially and as applied to them.

5.      Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. §1988;

6.      Nominal Damages.

7.      Such other relief consistent with the injunction as appropriate; and

8.      Such other further relief as the Court deems just and appropriate.

Dated: August 3, 2021.

Respectfully submitted,


/s/ Alan Beck

Counsel for Plaintiff

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com


/s/ Kevin O'Grady
Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1136 Union Mall, Suite 808
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com