Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1136 Union Mall, Suite 808
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| PETER ROA and RANDALL CHATMAN FRANKLIN | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | )   Civil Action No. _____ ) ) |
| CITY AND COUNTY OF HONOLULU | )MEMORANDUM IN SUPPORT OF )MOTION FOR PRELIMINARY )INJUNCTION ) |
|  | ) Judge: N/A ) Trial: N/A ) Hearing: N/A |
| Defendant. | ) |
| _____ | ) |

# Table of Contents

Introduction ........................................................................................................ 1

Plaintiffs Are Likely to Succeed on the Merits........................................... 1

     Plaintiffs Are Not Precluded from FirearmsOwnership Under Hawaii Law.  1

Disqualifying Plaintiffs From Firearm Ownership Violates the Second Amendment ........................................................................................................ 6

This Court Should Find That Plaintiffs' Prohibition Is Categorically Invalid…..…9

Strict Scrutiny Should Apply to Plaintiffs' Claims................................................10

Under Intermediate Scrutiny the Ban Fails............................................................11

Defendants Ban on Plaintiffs' Right to Firearms Ownership................................14

Violates Due Process Because it is Ultra Vires .....................................................14

The City's Policy Violates Equal Protection ..........................................................17

Vagueness/Fair Notice ...........................................................................................19

Plaintiffs Will Suffer Irreparable Harm................................................................20

Granting Preliminary Injunctive Relief Is in the Public Interest ...........................21

The Balance of Equities Tips Sharply in Plaintiff Favor .......................................22

Waiver of Bond is Proper and Appropriate Under These Circumstances………  23

This Court Should Consolidate Pursuant to Rule 65(a)(2)………………………..24

Conclusion..............................................................................................................25

## Cases

*Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127 (9th Cir. 2011)...............22

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046,
    (9th Cir. 2009) ............................................................. 1

*Binderup v. Att'y Gen*, ....................................................................12

*Chalk v. U.S. Dist. Ct. (Orange Cty. Superin. of Schs.),* 840 F.2d 701
    (9th Cir. 1998). ............................................................. 1

*Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778 (2d Cir. 2007)..................15, 17

*District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783 (2008)...... 6, 7, 8. 18

Donald J. Trump for President, Inc. v. Bullock, No. CV 20-66-H-DLC, 2020 U.S.
    Dist. LEXIS 169794, at *2 (D. Mont. Sep. 16, 2020)……………………..24

*East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838 (N.D. Cal. 2018)….23

*Elrod v. Burns*, 427 U.S. 347, 373 (1976) ............................................................20

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011)....................................11, 20

*Fisher v. Kealoha*, 2012 U.S. Dist. LEXIS 90734, *40, 2012 WL. ...........20, 21, 23

*Fisher v. Kealoha*, 49 F. Supp. 3d 727 (D. Haw. 2014)......................................... 3

*Fisher v. Kealoha*, 855 F.3d 1067 (9th Cir. 2017)............................................7, 10

*Fisher v. Kealoha*, 976 F. Supp. 2d 1200 (D. Haw. 2013).................................. 3, 4

*Fotoudis v. City & County of Honolulu*, 54 F. Supp. 3d 1136 (D. Haw. 2014)..8, 13

*Grayned v. City of Rockford*, 408 U.S. 104 (1972).................................................19

*Henry v. Cty. of Nassau*, No. 20-1027-cv, 2021 U.S. App. LEXIS 22137, at *17
    (2d Cir. July 26, 2021)……………………………..………………………14

*Jackson v. City & County of San Francisco*, 746 F.3d 953 (9th Cir. 2014) ...6, 9, 10

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009)..............................21

*McDonald v. City of Chicago*, 561 U.S. at 742 (2010) .........................................20

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)..............................................20

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702 (9th Cir. 1997) ...............................20

*OSU Student Alliance v. Ray*, 699 F.3d 1053 (9th Cir. 2012) ................................18

*People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985)………………………….23, 24

*Preminger v. Principi*, 422 F.3d 815 (9th Cir. 2005)............................................21

*Rhode v. Becerra,* 2020 U.S. Dist. LEXIS 71893, *98...........................................14

*Richmond v. Peraino*, 128 F. Supp. 3d 415 (D. Mass. 2015)................................ 9

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) ...........................................22

*Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538 (2d Cir. 2014) .......................................................................................14

*Schweiker v. Wilson*, 450 U.S. 221 (1981). .........................................................18

*Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002)...........................................18, 19

*Silvester v. Harris*, 843 F.3d 816, 821-22 (9th Cir. 2016) ................................6, 12

*Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707 (1981)10,11, 18

*Tyler v. Hillsdale Cnty. Sheriff's Dep't,* 837 F.3d 678 (6th Cir. 2016) .............12, 13

*U.S. v. Castleman*, 134 S. Ct. 1405 (2014) ............................................................ 3

*United States v. Chovan,* 735 F.3d 1127 (9th Cir. 2013) ................................*passim*

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) .................................22

*Weaver v. City of Montebello*, 370 F.Supp.3d 1130, 1139 (C.D. Cal. 2109)……..23

*Wesson v. Town of Salisbury*, 13 F. Supp. 3d 171 (D. Mass. 2014)....................... 9

*Winter v. Nat. Res. Def. Council, Inc*., 55 U.S. 7 (2008) ....................................... 1

**Statutes**

H.R.S. § 134-1 .....................................................................................2, 4, 5

H.R.S. § 134-7 .......................................................................................5, 19

H.R.S. § 134-7(b)............................................................................2, 3, 4, 9, 13

H.R.S. § 701-107 ................................................................................2, 4, 19

H.R.S. § 711-1101 .............................................................................1, 3, 4

H.R.S. § 711-1106(1)(a) ....................................................................3, 5

**Treatises**

Charles Alan Wright et al., Federal Practice and Procedure § 2948.1
(2d ed. 1995)...............................................................................20

## Introduction

Plaintiffs are both Honolulu residents, who the City and County of Honolulu ("City"), through an independent policy or its application of State law, will not allow to own firearms due to violations of disorderly conduct. They face deprivation of their constitutional rights and are entitled to an immediate injunction to enjoin the Defendant from its unconstitutional conduct.

"The purpose of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Ct. (Orange Cty. Superin. of Schs.),* 840 F.2d 701, 704 (9th Cir. 1998). To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in favor of injunction; and (4) that an injunction is in the public interest. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc*., 55 U.S. 7, 20 (2008)).

## Plaintiffs Are Likely to Succeed on the Merits

### Plaintiffs Are Not Precluded from Firearm Ownership Under Hawaii Law.

Plaintiffs have been convicted of violations for disorderly conduct i.e. H.R.S. §711-1101(1)(a). *See* Complaint ¶¶ 21, 36. The City argues pursuant to

those convictions that Plaintiffs are barred from receiving a firearm permit

under H.R.S. § 134-7(b). *See* Complaint ¶ ¶ 33, 41. It reads as follows:

> (b) No person who is under indictment for, or has waived indictment
> for, or has been bound over to the circuit court for, or has been
> convicted in this State or elsewhere of having committed a felony, or
> any crime of violence, or an illegal sale of any drug shall own,
> possess, or control any firearm or ammunition therefore.

However, a violation is not a crime under Hawaii law.

> H.R.S. §701-107  Grades and classes of offenses.  (5)… A violation
> does not constitute a crime, and conviction of a violation shall not
> give rise to any civil disability based on conviction of a criminal
> offense.

Violations do not carry penalties associated with crimes. The City's reliance

on Hawaii law is contrary to a plain reading of the H.R.S.  Thus, they are not

prohibited from firearms ownership pursuant to H.R.S. §134-7(b)'s crime of

violence provision.  Therefore, the City's prohibition on Plaintiffs is an

independent city policy which is unsupported by state law and is unconstitutional

for all the reasons laid out below. Even if this Court believes that a violation could

carry criminal penalties, disorderly conduct is not a crime of violence.

The statutory scheme defines a "crime of violence" as "any offense, as

defined in title 37, that involves injury or threat of injury to the person of

another." H.R.S. § 134-1. As argued below, Plaintiffs' convictions for disorderly

conduct do not qualify as a "crime of violence." In the event this Court disagrees

with this analysis, then H.R.S. § 134-7(b) is unconstitutional as applied to Plaintiffs. Nearly 7 years ago, this Court decided similar issues in *Fisher v. Kealoha*.

In *Fisher*, the litigant was convicted of harassment i.e. Hawai'i Revised Statutes ("H.R.S.") § 711-1106(1)(a). *See Fisher v. Kealoha*, 976 F. Supp. 2d 1200, 1204, 2013 U.S. Dist. LEXIS 141095, *7. The City argued that this precluded the litigant from owning a firearm pursuant to both 134-7(a) and (b). Judge Kay disagreed and found "H.R.S. § 134-7(b) does not disqualify Plaintiff from exercising his Second Amendment rights because the Court cannot conclude that his convictions for harassment constitute a crime of violence." *Id.* at 1224, 2013. This was because the City, pursuant to its document retention policy, had destroyed the original paperwork and that "H.R.S. § 711-1106(1)(a) is not categorically a crime of violence." *Id.* at 1223. Thus, a conviction of harassment is not dispositive evidence that a person has been convicted of a crime[1]. Similarly, neither is disorderly conduct. In Hawaii disorderly conduct consists of:

> **§711-1101 Disorderly conduct.** (1)  A person commits the offense of
> disorderly conduct if, with intent to cause physical inconvenience or

---

[1] *Fisher v Kealoha* was reconsidered due to the Supreme Court's ruling in *U.S. v. Castleman*, 134 S. Ct. 1405 (2014). *See Fisher v. Kealoha*, 49 F. Supp. 3d 727, 738. There the Court found that any conviction for domestic violence is a violation of the Lautenberg Amendment. This, however, does not change the analysis in the instant matter because this Court's later ruling dealt solely with domestic violence under federal law which is not applicable to Plaintiffs.

> alarm by a member or members of the public, or recklessly creating a
> risk thereof, the person:
>
> (a)  Engages in fighting or threatening, or in violent or tumultuous
> behavior;

A conviction for disorderly conduct is not dispositive evidence that one has

committed a crime of violence. In Plaintiffs' cases, both where convicted of

violations of disorderly conduct. *See* Complaint ¶¶ 21, 36. Under Hawaii law, "[a]

violation does not constitute a crime, and conviction of a violation shall not give rise

to any civil disability based on conviction of a criminal offense". *See* H.R.S. §701-

107. Thus, Plaintiffs' violations do not rise to crimes of violence and Hawaii law does

not preclude them from firearm ownership.

Conversely, a person can also be convicted of disorderly conduct involving

non-violent behavior such as "abusive language." This is the underlying act that

resulted in Plaintiff Roa's conviction.  Based upon the plain language of the statute,

the terms "injury" and "threat of injury" are not elements of disorderly conduct as it is

defined in H.R.S. § 711-1101. "Compare H.R.S. § 134-1 with" H.R.S. § 711-1101.

*See Fisher*, 976 F. Supp. 2d at 1221.  As a result of the above, this Court should find

"that the legislative history does not indicate an intent to categorically include"

disorderly conduct "as a crime of violence". *Id* at 1222-1223.

This Court should also construe H.R.S. § 711-1101(1)(a) in favor of Plaintiffs

pursuant to the doctrine of lenity as did the Court in *Fisher*. *Id*. at 1223. "In addition

to the above finding that the legislative history does not indicate that harassment

categorically constitutes a crime of violence under H.R.S. § 134-7(b), the Court also construes H.R.S. § 134-1 in favor of Plaintiff pursuant to the doctrine of lenity." This Court should do the same.  There is no support in the legislative history to find that a conviction for disorderly conduct is categorically a crime of violence.  Finally, the Court found "that holding that harassment is categorically a crime of violence would not align with the reason and spirit of the law…This Court declines to interpret § 711-1106(1)(a) in a manner that shifts the focus to whether the conduct causes a "threat of injury" as opposed to deterring conduct that offends a person's "psyche and mental well-being" even if there is no "threat of injury." *Id*. at 1223.  Similarly, the disorderly conduct statute appears to be designed to deter conduct that offends a person's "psyche and mental well-being" even if there is no "threat of injury." The same applies here. Even if the black letter law did not say a violation was not a crime, this Court should follow the reasoning in *Fisher* and find that a conviction for disorderly conduct does not constitute a crime of violence.

The City is precluding Plaintiffs through an independent city policy while erroneously claiming to be applying state law without authority.  If this Court agrees with this reasoning, then the City is disqualifying Plaintiffs from firearm ownership and in so doing violates, the Second Amendment, Due Process, and Equal Protection. Alternatively, if H.R.S. § 134-7 or another provision of Hawaii

law authorizes or requires the removal of Plaintiffs' firearm rights, then Hawaii state law is unconstitutional as applied to Plaintiffs.

## Disqualifying Plaintiffs From Firearm Ownership

## Violates the Second Amendment

Permanently removing Plaintiffs' firearm rights violates the Second Amendment regardless of whether the City is doing so as an independent policy or through an application of state law. The Ninth Circuit "along with the majority of our sister circuits, has adopted a two-step inquiry in deciding Second Amendment cases: first, the court asks whether the challenged law burdens conduct protected by the Second Amendment; and if so, the court must then apply the appropriate level of scrutiny." *See Silvester v. Harris*, 843 F.3d 816, 820-821 (9th Cir. 2016). "In the first step, we ask 'whether the challenged law burdens conduct protected by the Second Amendment,' [*United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013)], based on a 'historical understanding of the scope of the [Second Amendment] right,' *Heller*, 554 U.S. at 625, or whether the challenged law falls within a 'well-defined and narrowly limited' category of prohibitions 'that have been historically unprotected,'" *See Jackson v. City & County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014).  If the challenge survives the first step, the next step is to determine the appropriate level of scrutiny.  "In ascertaining the proper level of scrutiny, the court must consider: (1) how close the challenged law comes

to the core of the Second Amendment right, and (2) the severity of the law's burden on that right." *Id*. at 960-61.

"The result is a sliding scale. A law that imposes such a severe restriction on the fundamental right of self-defense of the home that it amounts to a destruction of the Second Amendment right is unconstitutional under any level of scrutiny." *Id*. at 961.  That is the essence of the holding in *District of Columbia v. Heller*, 554 U.S. 570, 628-629 (2008). A law that implicates the core of the Second Amendment right and severely burdens that right warrants strict scrutiny. *See Chovan*, 735 F.3d at 1138. Otherwise, intermediate scrutiny is appropriate. "[I]f a challenged law does not implicate a core Second Amendment right, or does not place a substantial burden on the Second Amendment right, the court may apply intermediate scrutiny."  *Silvester*, 843 F.3d at 821.  "Indeed, in *Chovan*, we applied 'intermediate' rather than 'strict' judicial scrutiny in part because section 922(g)(9)'s 'burden' on Second Amendment rights was 'lightened' by [various] mechanisms." *Fisher v. Kealoha*, 855 F.3d 1067, 1071 (9th Cir. 2017).  This Court should, therefore, find the policy at issue is categorically invalid under any level of scrutiny.  If it does not, it should apply strict scrutiny to the City's policy of permanently removing Plaintiffs Second Amendment rights over a conviction for disorderly conduct because it amounts to a destruction of the core Second Amendment right, which is to own firearms in case of confrontation. Regardless of

whether this Court "implements an 'important government objective' (intermediate scrutiny) or a 'compelling state interest' (strict scrutiny)", these laws are "neither 'substantially related' nor 'narrowly tailored' to such interests." *Fotoudis v. City & County of Honolulu*, 54 F. Supp. 3d 1136, 1144 (D. Haw. 2014).

In reviewing the federal ban on firearm ownership by those convicted of domestic violence, the Ninth Circuit in *United States v. Chovan* found that violent misdemeanants receive Second Amendment protection.  "[W]e conclude that by prohibiting domestic violence misdemeanants from possessing firearms, § 922(g)(9) burdens rights protected by the Second Amendment." *United States v. Chovan*, 735 F.3d 1127, 1137 (9th Cir. 2013). As we have seen in the Founding period, felonies historically resulted in disqualification from certain rights, but misdemeanors did not, nor did infractions, nor restraining orders. *Id.* at 1149 (Bea, concurring).

Circuit precedent dictates the Plaintiffs have Second Amendment rights. Thus, the next matter is for this Court to determine what level of scrutiny is appropriate for this Court to apply to this challenge.  A law that imposes such a severe restriction on the core right of self-defense that it "amounts to a destruction of the [Second Amendment] right," is unconstitutional under any level of scrutiny. *Heller*, 554 U.S. at 629 (internal quotations omitted). By contrast, if a challenged law does not implicate a core Second Amendment right, or does not

place a substantial burden on the Second Amendment right, we may apply intermediate scrutiny. *Jackson v. City & County of San Francisco*, 746 F.3d 953, 961 (9th Cir. 2014).

### This Court Should Find That Plaintiffs' Prohibition Is Categorically Invalid

This Court should find that the City policy and/or H.R.S. §134-7(b) is categorically invalid as applied to Plaintiffs because it amounts to a destruction of the Second Amendment right. *See Id*.  Plaintiffs' challenge is distinguishable from *Chovan* in this regard "by virtue of [Chovan]'s criminal history as a domestic violence misdemeanant." *Chovan,* 735 F.3d at 1138. In the instant matter, Plaintiffs were convicted of violations which are not even crimes under Hawaii law. Plaintiffs should, therefore, be considered law-abiding citizens afforded full Second Amendment protection.

Support for this can be found in *Wesson v. Town of Salisbury*, 13 F. Supp. 3d 171 (D. Mass. 2014) and *Richmond v. Peraino*, 128 F. Supp. 3d 415 (D. Mass. 2015), both Courts court found that a ban on firearms ownership based on decades old marijuana convictions was unconstitutional without the need to apply scrutiny. Much like disorderly conduct, possession of small amounts of marijuana is not the type of conviction that demonstrates a person has a criminal disposition. The conduct of the City conduct destroys Plaintiffs' rights to own firearms, and this amounts to the rare type of infringement that requires no interest balancing at all to

decide.  This Court should simply find the City's policy and/or H.R.S. §134-7(b) is categorically unconstitutional as applied to Plaintiffs. If this Court does not, strict scrutiny should apply, because Defendant's conduct strikes at the core of the Second Amendment right.

### <u>Strict Scrutiny Should Apply to Plaintiffs' Claims</u>

Post-*Heller*, the Ninth Circuit has developed a body of case law which supports the application of strict scrutiny in this matter if means end scrutiny is required. In *Fisher* the Ninth Circuit suggested that strict scrutiny should apply in a subsequent challenge similar to Mr. Fisher's.

> Unlike Fisher, however, Chovan never argued that section [18 U.S.C.] 922(g)(9) was unconstitutional as applied to him because California (Chovan's state of conviction) provided too few of the restoration mechanisms listed in section 921(a)(33)(B)(ii). *See* [*United States v. Chovan,* 735 F.3d 1127, 1137-42 (9th Cir. 2013)]. Indeed, in *Chovan*, we applied 'intermediate' rather than 'strict' judicial scrutiny in part because section 922(g)(9)'s 'burden' on Second Amendment rights was 'lightened' by those mechanisms.

> *Fisher,* 855 F.3d at 1071.

In this matter, the ban at issue similarly does not "leave open alternative channels for self-defense" and is thus a severe burden on Plaintiffs' Second Amendment rights. *Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 961 (9th Cir. 2014). Accordingly, Plaintiffs' right to self-defense is completely foreclosed by the City's policy. Strict scrutiny should apply, and the City must demonstrate a compelling government interest to permanently deprive a person of their Second

Amendment right for a conviction of disorderly conduct and demonstrate how that is narrowly tailored to achieve that interest. *See Thomas v. Review Bd. of Ind.do Employment Sec. Div.*, 450 U.S. 707, 718 (1981) ("The state may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving some compelling state interest."). In *Ezell*, the 7th circuit applied "not quite strict scrutiny" to Chicago's prohibition on live-fire training ranges—in part because Chicago required residents to undergo such training to obtain a license to possess firearms at all. *Ezell v. City of Chicago*, 651 F.3d 684, 689 (7th Cir. 2011).

The City has similarly curtailed Plaintiffs' Second Amendment rights. This Court should apply true strict scrutiny and find that there is no compelling government interest in permanently removing Plaintiffs' Second Amendment rights for violations of disorderly conduct. Even if it does, this scheme is not narrowly tailored to achieve that goal. In the alternative, this Court should employ the *Ezell* approach and find that the County has not demonstrated such a risk to public safety that its firearms prohibition is justified. Even if intermediate scrutiny applies, this Court should still rule in Plaintiffs' favor.

## Under Intermediate Scrutiny the Ban Fails

Even if this Court finds intermediate scrutiny is appropriate to the instant case, the City's application of Hawaii law cannot withstand constitutional muster.

Our intermediate scrutiny test under the Second Amendment requires that (1) the government's stated objective . . . be significant, substantial, or important; and (2) there . . . be a 'reasonable fit' between the challenged regulation and the asserted objective." *Silvester v. Harris*, 843 F.3d 816, 821-22 (9th Cir. 2016) (quoting *Chovan*, 735 F.3d at 1139). The City simply has not and cannot present evidence that the City's policy and/or application of state law fulfills this test. In any event, many Courts have struck similar or less restrictive laws based on intermediate scrutiny.

In *Binderup v. Att'y Gen*, the Third Circuit sitting *en banc* applied intermediate scrutiny in finding 18 U.S.C. § 922(g)(1) unconstitutional as applied to the litigants:

> But whether we apply intermediate scrutiny or strict scrutiny…the Government bears the burden of proof on the appropriateness of the means it employs to further its interest. [citations omitted] Here the Government falls well short of satisfying its burden—even under intermediate scrutiny. The record before us consists of evidence about the Challengers' backgrounds, including the time that has passed since they last broke the law. It contains no evidence explaining why banning people like them (i.e., people who decades ago committed similar misdemeanors) from possessing firearms promotes public safety.

836 F.3d 336 (3d Cir. 2016) (en banc)

In *Tyler v. Hillsdale Cnty. Sheriff's Dep't,* the Sixth Circuit sitting *en banc* ruled that a person who "has been adjudicated intellectually disabled" or "has been committed to a mental institution" is not permanently barred from possessing

firearms, 837 F.3d 678 (6th Cir. 2016) (en banc). Judge Julia Gibbons wrote that under intermediate scrutiny, the burden of justification is demanding and it rests entirely on the State and "in discharging this burden, the government can rely on a wide range of sources, including legislative history, empirical evidence, case law, and even common sense, but it may not 'rely upon mere anecdote and supposition'" (*Tyler*, No. 13-1876, slip op. at 20). In *Tyler*, according to Judge Gibbons, the government had not presented sufficient evidence of the continued risk presented by persons who were previously committed (*Id.* at 24). Thus, the statute, as applied, given the evidence supplied, failed intermediate scrutiny.

Plaintiffs' challenge, in this matter, is analogous. There is no evidence that banning people from firearm ownership who have been convicted for disorderly conduct promotes a government interest. Even if there is a government interest, this policy is not sufficiently tailored to support that interest. "Here, assuming § 134-7(b) "implements an 'important government objective' (intermediate scrutiny) or a 'compelling state interest' (strict scrutiny), it is neither 'substantially related' nor 'narrowly tailored' to such interests." *Fotoudis v. City & County of Honolulu*, 54 F. Supp. 3d 1136, 1144 (D. Haw. 2014). This is highly distinguishable from *United States v Chovan*. In *Chovan,* the government was able to present volumes of evidence that those convicted of domestic violence are at a significantly higher risk of recidivism. "[T]he government has referred to domestic violence studies

mentioned by the *Skoien* court showing that the recidivism rates for individuals convicted of domestic violence is significant—between 35 and 80 percent." *Chovan*, 735 F.3d at 1141.  There simply is no evidence that those convicted of disorderly conduct are a danger to the public. The City's "purely legal argument without evidence is not enough" to survive intermediate scrutiny. *Rhode v. Becerra,* 2020 U.S. Dist. LEXIS 71893, *98. The Second Circuit found the permanent revocation of a pistol permit due to an ex parte application failed intermediate scrutiny.  "Such actions do not withstand intermediate scrutiny because *ex parte* orders of protection issue without adversarial testing." *Henry v. Cty. of Nassau*, No. 20-1027-cv, 2021 U.S. App. LEXIS 22137, at *17 (2d Cir. July 26, 2021). The City's policy is unconstitutional as applied to Plaintiffs. In the alternative, the City's application of state law is unconstitutional as applied.

### Defendant's Ban on Plaintiffs' Right to Firearms Ownership
### Violates Due Process Because it is Ultra Vires

As established above, the City's interpretation of Hawaii law is ultra vires. This is a violation of due process. Under the law governing substantive due process, Plaintiffs must prove that: (1) he had a valid interest at stake; and (2) defendants infringed on that interest in an arbitrary or irrational manner. *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 545 (2d Cir. 2014).  Plaintiffs have a fundamental right to own firearms which is being

infringed by the City misapplying state law. This is the exact same position the Second Circuit has found in the property rights context. As shown below, this Court should adopt the Second Circuit's reasoning and apply it in this matter. In this case, a due process violation exists because Defendant acted in an ultra vires manner which is inherently arbitrary. In *Cine SK8, Inc. v. Town of Henrietta (*The d/b/a of Cine SK8 is Fun Quest), the owners of a family recreation business called Fun Quest obtained a special use permit to host youth dances at their facility. 507 F.3d 778, 779 (2d Cir. 2007). One night, in 2002, an exceptionally large group of teenagers arrived at Fun Quest. *Id.* at 780. These teenagers came from a nearby movie theater that had lost power. *Id*. The crowd became so dense that ingress and egress was cut off and the fire marshal was summoned to the scene. *Id*. Thousands of people were trying to push their way into Fun Quest by the time the fire marshal arrived and cleared the area with the help of police. *Id.* at 781.

Days later, one of the Henrietta town supervisors sent a letter to the owners of Fun Quest asking that they immediately discontinue teen dances. *Id.* The letter threatened to revoke or amend Fun Quest's special use permit if the owners did not comply. *Id*. The supervisors held a special meeting the next day at which they reviewed the overcrowding incident. The board then held its regular meeting and passed a resolution calling for a public hearing. After a contentious hearing, the board voted unanimously to adopt a resolution amending Fun Quest's special use

permit to forbid teen dances. *Id.* at 782. Fun Quest later went bankrupt and had to close because the dance ban destroyed its business. *Id.* at 783. The owners sued the town for violating their substantive due process rights because, they argued, the Board did not have authority to amend a validly issued special use permit under town regulations. *Id.* at 784.

The Second Circuit concluded that the appropriate question to ask in this situation was whether the town infringed on the owners' property rights in an arbitrary or irrational manner. The court examined the town regulations and discovered that the Board could approve, deny, suspend, or revoke a special use permit, but nowhere did the code provide that the Board had the authority to amend a duly issued special use permit and place limitations on it. The Second Circuit thus agreed with the property owners: "[I]f the Town Board did not have authority for the actions it took regarding Fun Quest's permit—as it appears it did not—the Board's actions were ultra vires and, as a result, sufficiently arbitrary to amount to a substantive due process violation." *Id.* at 790. The Second Circuit reversed the lower court's award of summary judgment to the town and remanded the case to allow Fun Quest's owners to proceed on their substantive due process claim.

Similarly, Plaintiffs have had their Due Process rights violated by the City's ultra vires conduct.  If the City did not have authority for the actions it took regarding Plaintiffs' firearms rights — as it appears it did not — Defendants'

"actions were ultra vires and, as a result, sufficiently arbitrary to amount to a substantive due process violation." *Id*. 790. In *Cine SK8,* the litigants were able to invoke Due Process because they were able to establish a protected property interest. Here, Plaintiffs may invoke Due Process because they have a protected liberty interest in their right to own a firearm for purposes of lawful self-defense as well as a protected property interest in acquiring firearms. As in *Cine SK,* Defendant's ultra vires conduct is inherently arbitrary and the decision to issue Plaintiff's permits was made through a process tainted with fundamental irregularities. Here, as in *Cine SK*, if the City does not have authority for the actions it took regarding Plaintiffs' firearm permit their actions "were ultra vires and, as a result, sufficiently arbitrary to amount to a substantive due process violation." The City is acting outside of the scope of the laws promulgated by the Hawaii legislature. Plaintiffs have a protected liberty and property interest in their firearm permits and firearms. The City's conduct is ultra vires. That violates Due Process.

## The City's Policy Violates Equal Protection

The City's policy is a violation of Equal Protection because Plaintiffs are being treated differently than others who have never been convicted of a crime of violence;

> When a state statute burdens a fundamental right or targets a suspect class, that statute receives heightened scrutiny under the Fourteenth Amendment's Equal Protection Clause…However, if a legislative act neither affects the exercise of a fundamental right, nor classifies persons based on protected characteristics, then that statute will be upheld "if the classification drawn by the statute is rationally related to a legitimate state interest."
>
> *Schweiker v. Wilson*, 450 U.S. 221, 230 (1981).

*Silveira v. Lockyer*, 312 F.3d 1052, 1087-88 (9th Cir. 2002) abrogated on other grounds by *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783 (2008).

According to *Heller*, Plaintiffs have a fundamental right to own a firearm for self-defense. Thus, strict scrutiny applies. "Therefore, the University's differential treatment of plaintiffs will draw strict scrutiny (as opposed to rational basis review) under the Equal Protection Clause only if it impinged plaintiffs' First Amendment rights." *See OSU Student Alliance v. Ray*, 699 F.3d 1053, 1067 (9th Cir. 2012).

The City must demonstrate a compelling government interest in order to permanently remove a person's Second Amendment right for a conviction of disorderly conduct as a violation. The City must also show how that is narrowly tailored to achieve that interest. *See Thomas v. Review Bd. of Ind.do Employment Sec. Div.*, 450 U.S. 707, 718 (1981).  There is no compelling government interest for the City to treat Plaintiffs differently than other citizens that have not been convicted of a crime of violence. Even if the City had a compelling interest, a

complete ban on Plaintiffs' right to right to own firearms would not be narrowly tailored.  Thus, the City's conduct violates the Equal Protection Clause.

Even if this Court were to find that rational scrutiny applies, allowing some individuals, who are non-statutorily precluded the right to own firearms, while disallowing others "is wholly unconnected to any legitimate state interest. A statutory exemption that bears no logical relationship to a valid state interest fails constitutional scrutiny". *Silveira v. Lockyer*, 312 F.3d 1052, 1091 (9th Cir. 2002). In this matter, the City's conduct is similarly irrational, and, thus, fails rational basis review.

## **Vagueness/Fair Notice**

Alternatively, if this Court finds that a violation conviction can be grounds to disqualify a person under H.R.S. §134-7, then the statute is unconstitutionally void.  "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  Here, the H.R.S. states that a violation conviction is not a crime and does not subject an individual to penalties associated with crimes.  (H.R.S. §701-107) H.R.S §134-7 only applies to crimes of violence. A reasonable person would not know a non-crime violation would be considered a crime of violence in light of the fact Hawaii law expressly

state otherwise.   Therefore, H.R.S. §134-7 fails to provide fair warning of what are prohibiting crimes and H.R.S. §134-7 is unconstitutionally vague both facially and as applied to the Plaintiffs.

## **Plaintiffs Will Suffer Irreparable Harm**

If this Court concludes that Plaintiffs are likely to prevail on their constitutional claims, the remaining preliminary injunction factors follow readily. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). The Ninth Circuit has imported the First Amendment "irreparable-if-only-for-a-minute" rule to other rights and, in doing so, has held deprivation of those rights is irreparable harm per se. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). The Second Amendment should be treated no differently. *See McDonald*, 561 U.S. at 780; *see also Ezell*, 651 F.3d at 700 (a deprivation of the right to arms is "irreparable and having no adequate remedy at law.")

This Court should conclude "that Plaintiff has established a likelihood of irreparable harm…At issue in this litigation is the alleged infringement of Plaintiff's right to bear arms for self-defense …, the very right that the Ezell court considered." *Fisher v. Kealoha*, 2012 U.S. Dist. LEXIS 90734, *40, 2012 WL.

## **Granting Preliminary Injunctive Relief is in the Public Interest**

For similar reasons, granting preliminary injunctive relief is clearly in the public interest. When challenging government action that affects the exercise of constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). As the Ninth Circuit has made clear, "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). The public interest thus tips sharply in Plaintiffs' favor. *Klein*, 584 F.3d at 1208. Moreover, the City has no plausible argument that enjoining enforcement of its denial will unduly endanger public safety. After all, doing so would merely return to the status quo, where Plaintiff legally owns firearms. The Court should conclude "that it is in the public interest to uphold Plaintiff's Constitutional right to bear arms in self-defense …, and accordingly finds that this factor weighs in favor of

granting the preliminary injunction." *Fisher v. Kealoha*, 2012 U.S. Dist. LEXIS 90734, *44, 2012 WL 2526923.

### The Balance of Equities Tips Sharply in Plaintiffs' Favor

Finally, the balance of hardships tips sharply in Plaintiffs' favor. This factor considers "the balance of hardships between the parties." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1137 (9th Cir. 2011). In contrast to Plaintiffs' and the public's many injuries, the State will suffer no concrete harm from a preliminary injunction. The State "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable . . . to allow the state . . . to violate the requirements of federal law." (citations omitted)). Granting the relief Plaintiffs seek will merely preserve the status quo from before the scheme took effect, while the case moves forward on the merits. This further "strengthens [Plaintiffs'] position" in the analysis of the equitable injunction factors. *Id*. On the other hand, granting an injunction will end the ongoing violation of Plaintiffs' rights, allowing them and the public the freedom to exercise those rights without fear of prosecution.

In ruling on a preliminary injunction in *Fisher v Kealoha,* which as established above dealt with similar facts, this Court found that "in the absence of a preliminary injunction, Plaintiff will be denied the use and enjoyment of firearms and will be unable to exercise his Second Amendment right to bear arms for self-defense within the home when he has demonstrated a likelihood of success in establishing his statutory qualification under state and federal law. For these reasons, the Court concludes that the balance of the equities tip in Plaintiff's favor". *Fisher v. Kealoha*, 2012 U.S. Dist. LEXIS 90734, *46-47, 2012 WL 2526923. This Court should find the same here.

### <u>Waiver of Bond is Proper and Appropriate Under These Circumstances</u>

"Notwithstanding its seemingly mandatory language," stating that the movant must provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Weaver v. City of Montebello*, 370 F.Supp.3d 1130, 1139 (C.D. Cal. 2109) (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)). The court may properly dispense with any such bond requirement when "the balance of ... equities weighs overwhelmingly in favor of the party seeking the injunction," *East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838, 869 (N.D. Cal. 2018) (quoting *Elliott v. Kiesewetter*, 98 F.3d 47,

60 (3d Cir. 1996)), when "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct," *Johnson* at 1086 (internal quotations omitted), and where the plaintiffs have a "likelihood of success on the merits," *People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985). All these factors are true here, as illustrated above, thus rendering a waiver both proper and appropriate.

<u>**This Court Should Consolidate Pursuant to Rule 65(a)(2)**</u>

Rule 65(a)(2) of the Federal Rules of Civil Procedure state "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. This Court should do so here because "[g]iven the expedited and predominately legal nature of the questions presented by this litigation," the "evidence presented by the parties through the briefing and hearing on the motions for preliminary injunctions will be relevant to adjudicating the Plaintiffs' claims on the merits." Donald J. Trump for President, Inc. v. Bullock, No. CV 20-66-H-DLC, 2020 U.S. Dist. LEXIS 169794, at *2 (D. Mont. Sep. 16, 2020). Furthermore, as established above, Plaintiffs are currently suffering irreparable harm and would thus, benefit from a consolidated hearing.

## **Conclusion**

"*Heller* was a constitutional decision. It recognized the scope of a passage of the Constitution. The boundaries of this right are defined by the Constitution. They are not defined by Congress." *United States v. Chovan*, 735 F.3d 1127, 1148 (9th Cir. 2013) (Bea, concurring)*.* Neither are they defined by the City. For the reasons raised above, the City's conduct violates the Constitution. Plaintiffs respectfully request this Court issue a preliminary injunction enjoining Defendant from denying them their right to firearm ownership based off their disorderly conduct violation convictions and to issue them permits to acquire firearms.

Dated: August 4, 2021.

Respectfully submitted,

/s/*Kevin Gerard O'Grady*
Kevin O'Grady

*/s/ Alan Beck*
Alan Alexander Beck